UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOSEPH JOHNSON, JR.**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES OF AMERICA**, <br><br> Defendant. | Case No. 17-2411 (CRC) |

### MEMORANDUM OPINION

Keep poking the bear and it will eventually claw back. After plaintiff Joseph Johnson filed this, his twelfth, lawsuit challenging his student loan debt, the government brought a counterclaim to collect the approximately $35,000 it says he owes. The question is whether the government's parry is a compulsory counterclaim that Federal Rule of Civil Procedure 13(a) required it to bring in one of Johnson's prior suits. Answering in the affirmative, the Court will grant summary judgment on the counterclaim for Mr. Johnson. For now at least, he has managed to elude the bear.

**I.    Background**

The background of this case has been fully recounted on several occasions. See, e.g., Johnson v. United States, No. 17-cv-2411 (CRC), 2019 WL 2424039, at *1–2 (D.D.C. June 10, 2019); Johnson v. Duncan, No. GJH-15-1820, 2017 WL 462049, at *1–2 (D. Md. Feb. 1, 2017), aff'd as modified, Johnson v. Devos, 775 F. App'x 86 (4th Cir. 2019); Johnson v. U.S. Dep't of Educ., 580 F. Supp. 2d 154, 155 (D.D.C. 2008), aff'd without op., No. 08-5468 (D.C. Cir. Apr. 10, 2009). A brief recap suffices here.

Johnson enrolled in college in the fall of 1993. Johnson, 2019 WL 2424039, at *1. Over the next few years, he obtained several federally guaranteed student loans that he eventually consolidated under a U.S. Department of Education ("Department") direct loan program. Id.; Compl. ¶ 5, ECF No. 1. Beginning in 2011, Johnson alleges that he made several attempts to repay his loans but the government wrongfully refused to accept or properly credit his checks. See id. at ¶¶ 13–30. Johnson's complaint focuses specifically on a $12,390 check that he claims to have submitted to the Department in February 2012. Johnson, 2019 WL 2424039, at *1; Compl. ¶¶ 28–30. According to Johnson, the Department accepted that check but failed to accurately reduce his overall debt. Johnson, 2019 WL 2424039, at *1; Compl. ¶¶ 28–30. Johnson further contends that although he has never defaulted on his loans, the Department falsely reported to credit agencies that he was delinquent on his payments. Johnson, 2019 WL 2424039, at *1; Compl. ¶¶ 31–33.

In October 2013, Johnson filed an administrative claim with the Department via a Standard Form 95 ("SF-95"), which is a precursor to filing claims under the Federal Tort Claims Act ("FTCA"). Status Report by U.S., Ex. A, ECF No. 47-1 (hereinafter, "SF-95"); see also Compl. ¶ 34; 28 U.S.C. § 2675(a). In the SF-95, Johnson asserted that the government had agreed to settle his debts in full by accepting his $12,390 check and, as a result, its continued collection efforts were unlawful. See SF-95. Johnson also filed several lawsuits involving the loans, the eleventh of which was filed in the United States District Court for the District of Maryland. See Johnson, 2017 WL 462049 (D. Md. Feb. 1, 2017) ("Johnson XI"). In that case, Johnson alleged that the Department misreported his outstanding debt and breached its agreement to accept the $12,390 check as recompense for his entire debt. Id. at *1–2. The

government filed an answer to Johnson's complaint and later moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), which the court granted. Id. at *6.

Several months later, Johnson filed the present suit in this Court. See Compl. In his complaint, Johnson lodged a host of claims against the government stemming from (once again) the Department of Education's failure to accurately report his debts and its mishandling of his $12,390 check. See id. ¶¶ 13–33. The government moved to dismiss the complaint, and the Court granted the motion, finding that *res judicata* precluded Johnson's claims given that he had previously filed—and lost—at least one other federal case raising the same claims. Johnson, 2019 WL 2424039, at *5 (citing Johnson XI).

After filing its motion to dismiss, the government brought a counterclaim against Johnson for the outstanding $33,314.91 that he allegedly owed on his student loans as of that time. Counterclaim ¶ 16, ECF No. 21. Johnson answered with thirty-six affirmative defenses. See Answer, ECF No. 24. The Court then requested the parties' views on whether the government's counterclaim was barred by Fed. R. Civ. P. 13(a), which prohibits the filing of certain counterclaims that a party neglected to file in a prior related action. See Jan. 24, 2020, Min. Order. The government responded in a status report that the counterclaim was not barred by Rule 13(a). See Status Report by U.S., ECF No. 47 ("Gov. Status Report"). The government reasoned that the counterclaim had not yet accrued in any of Johnson's prior lawsuits against the federal government save for Johnson XI. See id. at 4–6. As to Johnson XI, the government argued that the counterclaim was not compulsory in that case because: (i) the case was resolved by a judgment on the pleadings, see id. at 7–8; (ii) debt enforcement counterclaims are generally non-compulsory in litigation over the underlying debt, see id. at 8–9; and (iii) an exception for already-pending claims applied because Johnson's SF-95 was still pending before the

3

Department of Education when he filed Johnson XI, see id. at 9–10.  Finally, the government noted that even if the Court determines that its counterclaim is barred by Rule 13, the government may nonetheless recoup Johnson's debts through administrative channels.  Id. at 10–12.

After the government filed its status report, Johnson moved for summary judgment on the grounds that the government's counterclaim was compulsory in Johnson XI.  See Mot. for Summ. J. at 2–6, ECF No. 49.  The government opposed the motion, reiterating the points made in its prior status report.  See Gov. Opp. to Summ. J., ECF No. 51 ("Gov. Opp.").  Johnson's motion is ripe for the Court's resolution.

## II.     Legal Standard

A party seeking summary judgment must show that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "Once the movant has carried this initial burden, the party opposing summary judgment must then 'come forward with specific facts showing that there is a genuine issue for trial.'"  Harris v. Wash. Metro. Area Transit Auth., No. 20-cv-8 (CRC), 2020 WL 5798446, at *5 (D.D.C. Sept. 29, 2020) (Cooper, J.) (quoting Jeffries v. Barr, 965 F.3d 843, 859 (D.C. Cir 2020)).  In making this determination, the court must view the evidence "in the light most favorable to the nonmoving party" and draw all justifiable inferences in its favor.  Talavera v. Shah, 638 F.3d 303, 308 (D.C. Cir. 2011).

## III.    Analysis

"The purpose of [Rule 13] is to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters."  Columbia Plaza Corp. v. Security Nat'l. Bank., 525 F.2d 620, 625 (D.C. Cir. 1975) (cleaned up).  To that end, Rule 13

deems a counterclaim "compulsory" (rather than "permissive") if it arises out of the same transaction or occurrence as the opposing party's claim and does not require adding a third-party over whom the court lacks jurisdiction. Fed. R. Civ. P. 13(a)(1). A party that fails to plead a compulsory counterclaim is barred from asserting that claim in a future lawsuit. See Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 469 & n.1 (1974). Permissive counterclaims, by contrast, can generally be filed in a later lawsuit. See Fed. R. Civ. P. 13(b).

The government maintains that Rule 13 poses no bar to its counterclaim for three reasons. *First*, it argues that Rule 13(a)(1) does not apply when the prior litigation ended with a judgment on the pleadings absent any discovery. *Second*, it contends that the substance of the counterclaim—collection of Johnson's outstanding loans—is not sufficiently related to the various claims filed in Johnson XI to qualify as compulsory. And *third*, it argues that the counterclaim falls within an express exception for claims that were pending in another action at the time of the prior lawsuit. The Court will take each argument in turn.[1]

A. Prior Pleading

The parties first dispute whether discovery did or did not occur in Johnson XI. See Gov. Status Report at 7–8; Mot. for Summ. J. at 2, 4; Gov. Opp. at 3–6. This skirmish is beside the point. Application of Rule 13 does not depend on whether discovery took place, but rather, attaches when a party submitted a "pleading" in the prior action as defined by Rule 7(a). Fed. R. Civ. P. 13(a) ("A *pleading* must state . . . .) (emphasis added); see also Horn & Hardart Co. v.

---

[1] As noted above, the government also argues that the Court's assessment of whether its counterclaim is compulsory does not affect the validity of Johnson's outstanding debts or the government's ability to recoup that debt through other administrative avenues. The Court takes no position on this argument, as it is irrelevant to whether summary judgment is warranted by operation of Rule 13(a).

5

Nat'l R.R. Passenger Corp., 659 F. Supp. 1258, 1264 (D.D.C. 1987). Rule 7(a), in turn, defines "pleading" to include (among other things) answers to complaints. Fed. R. Civ. P. 7(a)(2).

Here, it is undisputed that the Government filed an answer to Johnson's complaint in Johnson XI. See Gov. Opp. at 3 ("The Government does not dispute that it initially answered the amended Complaint in Johnson XI and later amended that answer."). Plainly, then, the government filed a pleading for purposes of Fed. R. Civ. P. 13(a). As a consequence, the government was required to include any counterclaim in that pleading that qualified as "compulsory" under Rule 13(a) or risk losing the ability to file it in a later action. Indeed, the government aptly summarized this rule in its briefing: "Where the defendant in an action is obligated to plead, i.e., file an answer, *failure to assert a compulsory counterclaim in such an answer precludes subsequent litigation on that claim.*" Gov. Status Report at 6 (emphasis added) (cleaned up).

Despite this clear outcome, the government argues that the filing of a pleading "is not dispositive" because "the compulsory counterclaim rule [only] applies when the party does, in fact, have a valid claim." Id. at 7–8. By this logic, the government reasons that it was relieved of any burden to plead counterclaims in Johnson XI because that case was decided on the pleadings, revealing that Johnson's claims were "frivolous and wholly invalid." Gov. Opp. at 5–6. For the proposition that counterclaims are not compulsory in "frivolous" lawsuits, the government relies on Horn & Hardart Co. v. Nat'l R.R. Passenger Corp., 659 F. Supp. 1258, 1264 (D.D.C. 1987). This reliance is misplaced. In Horn, the court held that a party's claim was not compulsory because the party had "filed no pleading of any kind" in the prior suit but had instead filed a Rule 12(b)(6) motion to dismiss. Id. at 1263. The court observed that by so moving, the party was "in effect arguing that [the plaintiff] had not proffered a valid claim" and

6

that it thus "should not be required to fully litigate any claims of its own[.]" Id. at 1264. Based on this dictum, the government argues for a new rule that counterclaims are not compulsory if a party elects to file an answer but later prevails on a Rule 12(c) motion prior to discovery. The Court declines to adopt such a rule.

For whatever reason, the government chose to file an answer in Johnson XI. Once it did so, Rule 13(a) plainly required it to simultaneously file any compulsory counterclaims. Perhaps it would make sense to excuse that requirement for parties who obtain pre-discovery judgments on the pleadings under Rule 12(c), just as successful 12(b)(6) movants are excused. But this Court is bound to apply Rule 13 as written. See Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1417 (3d ed.) (noting that "the defendant who files a pleading automatically becomes subject to Rule 13(a)" regardless of whether the complaint stated "a claim on which relief ultimately can be granted"). Accordingly, the government's successful Rule 12(c) motion in Johnson XI did not relieve it of the obligation to bring otherwise compulsory counterclaims in that case.

B.  Transaction or Occurrence

Next, the Government briefly argues that its counterclaim to collect Johnson's outstanding debt is not sufficiently related to the claims in Johnson XI, which contested the amount and administration of his underlying debt. Gov. Status Report at 8–9. Again, a counterclaim must be part of the same transaction or occurrence as the opposing party's claim to be deemed "compulsory" under Rule 13. Fed. R. Civ. P. 13(a). "[T]he term 'transaction' is to be construed generously" in this context so as to serve the purposes of the rule. Columbia Plaza Corp., 525 F.2d at 625. When determining whether a counterclaim arises out of the same transaction or occurrence, courts consider factors such as "whether the claim involves the same

7

parties, the same agreements, the same evidence, or whether it could give rise to an irreconcilable judgment." Blue v. Fremont Inv. & Loan, 562 F. Supp. 2d 33, 41 (D.D.C. 2008).

Johnson XI presented various claims against the Department of Education involving Johnson's efforts to settle his outstanding student debts. Johnson specifically alleged that the Department was misreporting the amount he owed on his student loans and that it had reneged on its agreement to accept a partial payment in lieu of the entire outstanding debt. See Johnson XI, 2020 WL 462049, at *2. The government's counterclaim involves the same loans, Johnson's efforts to settle those loans, and the extent of Johnson's outstanding obligations.[2] See Counterclaim ¶¶ 10–16. In other words, the counterclaim involves the same parties and evidence, and there was a clear possibility that it could give rise to an irreconcilable judgment: Had the Maryland court agreed that Johnson's debts were settled in full, the court's judgment could not have been squared with a subsequent counterclaim to collect on those debts. The government's counterclaim thus falls within the same "transaction or occurrence" as the claims in Johnson XI for purposes of Rule 13.

Resisting this conclusion, the government cites Jackson v. Culinary Sch. of Wash., 811 F. Supp. 714, 719 (D.D.C. 1993), as "holding that an action to test the validity of a student loan and an action to collect the underlying debt are not 'common matters.'" Gov. Status Report at 8. But Jackson declared no such a rule, and the circumstances of Jackson place it far afield from this case. Jackson was a putative class action in which former students filed suit against their school, their lenders, and various agencies for fraudulently inducing them to take out student loans.

---

[2] For example, the government's counterclaim and Johnson XI implicate a common factual dispute as to the $12,390 check that Johnson sent in February 2012 in an attempt to settle his entire debt. See Johnson XI, 2020 WL 462049 at *5; Counterclaim at ¶¶ 19–20.

Jackson v. Culinary School of Wash., 788 F. Supp. 1233, 1239 (D.D.C. 1992).  In response, several defendants filed counterclaims to recover certain of the plaintiffs' outstanding debts. Jackson, 811 F. Supp. at 719.  The court dismissed the counterclaims without prejudice, reasoning that the breadth of the lawsuit rendered it "unable to determine the precise amounts of those counterclaims [or] the particular [p]laintiffs against whom the counterclaims have been made."  Id.  The court thus concluded that it would be "unwise and inefficient, as well as unfair to all the parties involved, to attempt to adjudicate such specific issues in a large, combined proceeding . . . with a large number of [p]laintiffs and [d]efendants."  Id.  Plainly, Jackson is not this case.  Here, the Court is presented with a single counterclaim against a single, known plaintiff over a readily identifiable sum of money.

Nor is the Court convinced by the government's passing reference to cases in which courts have treated collection claims as permissive in actions under the Federal Debt Collection Practices Act ("FDCPA") and the Truth in Lending Act ("TILA").  See Gov. Status Report at 9 (collecting cases).  These cases turned on the fact that the prior TILA or FDCPA claim was legally and factually distinct from the validity of the plaintiff's underlying debt, which was the subject of the collection claim.  See, e.g., Bauman v. Bank of Am., N.A., 808 F.3d 1097, 1102 (6th Cir. 2015) (differentiating a foreclosure action, which "requires a lender to prove that the debtor is in default and to prove the amount that the debtor owes," from a FDCPA claim, which "does not focus on the validity of the debt, but instead on the use of unfair methods to collect it") (cleaned up); Maddox v. Kentucky Finance Co., 736 F.2d 380, 382 (6th Cir. 1984) (differentiating an enforcement claim, which "involve[s] the obligations created by the underlying contract," from a TILA claim, which "enforces a federal policy regarding disclosure").  By contrast, the claims lodged in Johnson XI turn on the validity and extent of

Johnson's outstanding debts.  See Johnson XI, 2017 WL 462049, at *2 (observing that Johnson's claims "stem from his assertion that . . . [his] entire debt [was] paid and satisfied").  So too does the government's counterclaim to collect those debts.  As a result, even if the Court were to adopt the government's preferred interpretation of the FDCPA and TILA cases it would still find the counterclaim compulsory.

    C.  Exception for Claims Pending Elsewhere

Finally, the government contends that its counterclaim falls within an express exception to Rule 13(a) for claims that were already pending when the prior litigation began.  Rule 13(a)(2)(A) provides that "[t]he pleader need not state the claim if . . . [,] when the action was commenced, the claim was the subject of another pending action[.]"  Fed. R. Civ. P. 13(a)(2)(A).  Courts have concluded that claims pending in administrative tribunals (rather than before a state or federal court) qualify as "another pending action" under Rule 13(a)(2)(A).  See, e.g., Bethlehem Steel Co. v. Lykes Bros. S.S. Co., 35 F.R.D. 344, 346 (D.D.C. 1964) (concluding that claim was "pending" for purposes of Rule 13(a) exception when it was before the Maritime Board).  According to the government, this exception applies to its counterclaim because Johnson's SF-95 administrative claim was pending before the Department of Education at the time he filed Johnson XI.  As a consequence, the government reasons, it had no obligation to plead its counterclaim for Johnson's outstanding debts.

Johnson rejoins that his SF-95 was no longer pending when he initiated Johnson XI.  By that time, almost two years had elapsed since he filed the SF-95, and 28 U.S.C. § 2675 provides that "[t]he failure of an agency to make final disposition of a claim *within six months* after it is filed shall, at the option of the claimant any time thereafter, *be deemed a final denial of the claim*[.]"  Id. (emphases added).  According to the government, § 2675 gives the claimant the

*option* to treat a six-month delay as a denial, but Johnson declined to exercise that option by declining to include his FTCA claim in Johnson XI. Naturally, Johnson disagrees, pointing out that the government conceded elsewhere that his SF-95 claim was ripe as soon as the six-month statutory period had elapsed. See Mot. for Summ. J. at 5–6.

The Court need not resolve this dispute because the exception is inapplicable regardless. Rule 13(a)(2)(A) applies if the *government's* counterclaim were pending in another action. See Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1411 (3d ed.) (explaining that the exception relieves a defendant of "assert[ing] any *counterclaim* that already is before another federal court or before a state court at the time plaintiff files suit") (emphasis added). This makes good sense given that "[t]he purpose of the exception is . . . to prevent one party from compelling another to try his cause of action in a court not of the latter's choosing when the same cause of action is already the subject of pending litigation in another forum, one which was probably chosen by the owner of the cause of action concerned." Id. (quoting Union Paving Co. v. Downer Corp., 276 F.2d 468, 470 (9th Cir. 1960)).

Here, the government does not claim that it had an ongoing legal action to collect Johnson's outstanding debts at the time of Johnson XI. It contends instead that Johnson's allegations concerning the government's mishandling of those debts rendered its enforcement claim "pending" for purposes of the exception.[3] However, unlike Rule 13(a)'s broad "transaction or occurrence" test for deeming counterclaims compulsory, the exception applies

---

[3] The Court notes that this argument is in considerable tension with the government's argument in Section III.B. There, the government insists that its counterclaim is so distinct from Johnson's claims as to the validity of his debts that they cannot be considered the same "transaction or occurrence" under Rule 13(a). Here, by contrast, the government maintains that the claims are so similar that the counterclaim should be considered pending by virtue of Johnson's SF-95.

11

only when "*the* claim was the subject of another pending action," Fed. R. Civ. P. 13(a)(2)(A) (emphasis added).  Though no courts in this circuit appear to have determined what exactly constitutes "the claim" in this context, at least one other federal court has required that the specific claim at issue—not merely related claims—be the subject of another action in order for the rule to apply.  See Miller v. Canadian Nat'l Ry. Co., No. 19-cv-02152-JTF-cgc, 2019 WL 9042924, at *6 n.6 (W.D. Tenn. Dec. 17, 2019) (Claxton, Mag. J.) (recommending that Rule 13(a)(2)(A) does not apply to a specific claim that was not part of a pending action, even if the opposing party's related claims were a part of that action), adopted in relevant part sub nom. Miller v. Canadian Nat'l R.R. Co., No. 19-cv-02152-JTF-cgc, 2020 WL 1076046 (W.D. Tenn. Mar. 6, 2020).  As there was no pending enforcement action for the payment of Johnson's debts at the time Johnson XI was filed, the government's counterclaim was not "pending" at that time.  Rule 13(a)(2)(A) thus provides the government no relief.

## IV.    Conclusion

For the foregoing reasons, the Court will grant Johnson's Motion for Summary Judgment.  A separate Order shall accompany this Memorandum Opinion.


Date: March 12, 2021


CHRISTOPHER R. COOPER
United States District Judge